IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael W. McCoy, | C/A No. 0:10-1473-RMG-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Michael W. McCoy ("McCoy"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

On December 17, 2007 McCoy applied for DIB, alleging disability beginning May 5, 2007.[1] McCoy's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 6, 2009, at which McCoy, who was represented by counsel, appeared and testified. The ALJ, after hearing the testimony of a vocational expert, issued a decision on June 19, 2009 denying benefits and concluding that McCoy was not disabled. (Tr. 44-54.)

---

[1] McCoy initially alleged disability beginning December 27, 2006, but amended his alleged onset date at his hearing before the ALJ.

McCoy was fifty-seven years old at the time of his alleged disability onset date. (Tr. 96.) He has an eighth-grade education and past relevant work experience as a used car sales manager, a service/parts manager, a bartender, a machine shop operator, and a delivery driver. (Tr. 15, 106, 109.) McCoy alleges disability since May 5, 2007 due to lumbar stenosis, lumbar pain, limb pain, and a degenerated left hip. (Tr. 101.)

The ALJ found as follows:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant did not engage in substantial gainful activity during the period from his amended onset date of May 5, 2007 through his date last insured of December 31, 2007 (20 CFR 404.1571 *et seq.*).
\* \* \*
3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease and stenosis of the lumbar spine; degenerative joint disease of the left hip; and left knee derangement (20 CFR 404.1520(c)).
\* \* \*
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
\* \* \*
5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b). I specifically find that he can lift twenty pounds occasionally and ten pounds frequently and that he can sit for six of eight hours, walk for two of eight hours, and stand for two of eight hours. He can push or pull with the lower extremities occasionally. He can occasionally climb, balance, stoop, kneel, crouch, and crawl and can frequently crouch.
\* \* \*
6. Through the date last insured, the claimant was capable of performing past relevant work as an automobile service manager. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
\* \* \*

      7.      The claimant was not under a disability, as defined in the Social Security Act, at any time from May 5, 2007, the amended onset date, through December 31, 2007 the date last insured (20 CFR 404.1520(f)).

(Tr. 46-54.)

On May 4, 2010, the Appeals Council denied McCoy's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

    (1)    whether the claimant is engaged in substantial gainful activity;

    (2)    whether the claimant has a "severe" impairment;

    (3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

    (4)    whether the claimant can perform his past relevant work; and

    (5)    whether the claimant's impairments prevent his from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

PJG

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

McCoy argues that the ALJ's decision that McCoy was not under a disability was not supported by substantial evidence. Specifically, McCoy argues that, when determining his residual functional capacity ("RFC"), the ALJ erred in discounting McCoy's credibility and in discounting the opinions of Drs. Peter Manos and Charles Kanos. Further, McCoy argues that the ALJ erred in finding that he could return to his past relevant work.

**DISCUSSION**

**A.     McCoy's Credibility**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In this matter only the second step is at issue,[2] during which the ALJ must expressly consider "the intensity and persistence of the claimant's pain [or other symptoms] and the extent to which it affects [his] ability to work." Id. In making this determination, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating

---

[2] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)   Your daily activities;
(ii)  The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v)   Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi)  Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ found that McCoy had alleged "back pain, left knee pain, right leg pain and numbness, leg cramps, left hip pain, anxiety, and poor sleep." (Tr. 51.) However, in examining McCoy's credibility, the ALJ found that McCoy's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the [] residual functional capacity assessment."[3] (Id.) In reaching this conclusion, the ALJ expressly

---

[3] As stated above, the ALJ determined that McCoy retained the RFC to "perform sedentary work as defined in 20 CFR 404.1567(b). . . . [and] that he can lift twenty pounds occasionally and ten pounds frequently and that he can sit for six of eight hours, walk for two of eight hours, and stand for two of eight hours. He can push or pull with the lower extremities occasionally. He can occasionally climb, balance, stoop, kneel, crouch, and crawl and can frequently crouch." (Tr. 50.)



considered several factors in discounting the credibility of McCoy's subjective complaints and provided a thorough discussion explaining his credibility analysis with regard to each alleged ailment, as more fully described below.

**Back Pain.** Recognizing that McCoy's MRI showed degeneration, spondylosis, facet arthropathy, and nerve effacement, the ALJ limited McCoy to sedentary work. However, the ALJ observed that McCoy showed a normal gait on occasion, often showed a negative straight leg raise, was able to drive fifteen to twenty miles per week, and showed one of five Waddell's signs.[4] The ALJ also noted that McCoy's primary care physician, Dr. Manos, "consistently indicated a normal back exam." (Tr. 52.)

**Left Knee Pain.** Although the ALJ found that there was "hardly any objective evidence of this impairment besides Dr. Manos' notations of left knee derangement with associated tenderness, along with other illegible notations with respect to the claimant's knee," the ALJ limited McCoy to standing or walking only two hours of an eight-hour day and limited his use of the lower extremities with pushing or pulling. (Id.) The ALJ noted that although McCoy used a cane, Dr. Kanos stated that McCoy did not require one for normal work activity. The ALJ also found that there was no prominent evidence in the records of Dr. Kanos or Dr. Eugene Mironer indicating that knee pain was "an intractable problem" and that McCoy reported in May 2008 to Dr. Mironer that his pain was good with sitting or standing. (Id.)

**Right Leg Pain and Numbness.** After noting that McCoy's RFC determination included numerous exertional and postural limitations, the ALJ observed that (1) Dr. Kanos did not see a

---

[4] "Waddell signs are indications that a patient has nonorganic pain. They are used to identify patients who may require detailed psychological assessment. Three or more Waddell signs are deemed clinically significant." Wall v. Astrue, 561 F.3d 1048, 1056 n.10 (10th Cir. 2009) (citation omitted).

radicular component to McCoy's low back pain after McCoy's MRI showed nerve effacement, (2) McCoy denied radiation of pain in January 2007 and in April 2008, (3) although McCoy intermittently reported numbness, he showed normal sensory and motor exams on many occasions, and (4) Dr. William DeVault opined that McCoy's back pain adversely affected his right leg pain.

**Leg Cramps.** The ALJ observed that the leg cramps did not prevent McCoy from driving fifteen to twenty miles per week and that McCoy reported to Dr. Mironer that his medications were helping his leg cramps.

**Left Hip Pain.** After noting that he accounted for this allegation in McCoy's lower extremity, standing, walking, and postural limitations, the ALJ noted that McCoy exhibited a full range of motion of the left hip without pain for Dr. Kanos, McCoy showed a normal gait on numerous occasions, and Dr. Kanos stated that McCoy did not require a cane.

**Anxiety.** The ALJ observed that there was no evidence of more than minimally present symptoms of anxiety, that notes from the pain management clinic indicated that McCoy was calm and easygoing and did not suffer from anxiety, and that McCoy had only received treatment from his family practitioner without any specialized mental health treatment.

**Poor Sleep.** The ALJ found that the limitations in McCoy's RFC accounted for a reasonable amount of fatigue and noted that McCoy was sufficiently alert to drive on occasion and has not sought any specialized treatment.

McCoy argues that the ALJ erred in evaluating his credibility based on his contention that the ALJ erroneously used the following statements as support for discounting McCoy's allegations of pain:

1. "Family Practitioner cleared him to lift 40 pounds per day."

\* \* \*

    2.        The ALJ asserts that during "a course of physical therapy .. He achieved a pain reduction to 2/10 and cites records in Exhibit 27, pages 45-75 (30 pages!)(Tr. 47).

* * *

    3.        The ALJ states that a note indicating that Mr. McCoy showed a 1/5 Waddell's sign which "although not dispositive of malingering does indicate some exaggeration of symptoms." (Tr. 51).

* * *

    4.        The ALJ states that Dr. Manos' records show tenderness of the left knee but that there are no x-rays of the knee and notes that do not show abnormalities.

* * *

    5.        The ALJ used the arguments that Mr. McCoy did not "meet the listing" criteria as justification for diminishing the impact of chronic pain.

(Pl.'s Br. at 19-22, ECF No. 13 at 19-22) (errors in original). Upon a thorough review of the record as a whole and for the reasons that follow, the court finds that the ALJ did not err in his analysis of the credibility of McCoy's subjective complaints. See Craig, 76 F.3d at 595. As an initial matter, the court observes that McCoy has omitted relevant portions of the quotations from the ALJ's opinion. Further, McCoy appears to have taken some of these statements out of context or misread them.

McCoy's first allegation of error asserts that the ALJ erred based on his contention that the ALJ stated that a "[f]amily practitioner cleared him to lift 40 pounds per day." (Pl.'s Br. at 19, ECF No. 13 at 19.) The statement that McCoy appears to be referencing is included in an introductory paragraph at Step Two of the sequential analysis. After indicating that McCoy's allegations of pain and limitations stem in part from an on-the-job injury, the ALJ's entire sentence stated: "However, his family practitioner evaluating his progress for worker's compensation ultimately cleared him to lift up to 40 pounds per day, and I deferred to her earlier assessment that the claimant was relegated to only lifting up to 20 pounds per day, which is supported by the claimant's own testimony." (Tr. 46.) McCoy argues that this information was contained in a "Return to Work Form" that was not completed by his family practitioner or even a physician, but was completed by a physician's

assistant at Doctor's Care, which McCoy contends was his employer's medical provider. Further, McCoy argues that the "Return to Work Forms" were all completed prior to McCoy's amended onset date and the date of his lumbar MRI. Additionally, McCoy argues that contrary evidence exists in the record.

The court finds that these arguments do not render the ALJ's opinion unsupported, especially in light of the fact that (1) the ALJ acknowledged the assessment was completed to evaluate McCoy's progress for his worker's compensation claim; (2) the ALJ later indicated that these forms were completed by a treating physician's assistant; and (3) the ALJ ultimately rejected this assessment. (See Tr. 46, 47, 53.) Further, there is no indication in the opinion that the ALJ reduced McCoy's credibility based on the form indicating that he could lift up to forty pounds.

McCoy next argues that the ALJ mischaracterized the record based on McCoy's allegations that the ALJ stated that during "a course of physical therapy . . . [McCoy] achieved a pain reduction to 2/10" while citing thirty pages of medical records for this proposition. (Id.) The ALJ's entire statement provides: "The Claimant also completed a course of physical therapy, where he complained primarily of low back pain and still showed a reduced range of motion of the lumbar spine but achieved a pain reduction to 2/10." (Tr. 47.) This statement is included in the ALJ's summary of all of the medical records. Upon review of the record, and specifically McCoy's course of physical therapy which is contained in these thirty pages, (Tr. 193-223), the court rejects McCoy's arguments that the ALJ mischaracterized the records or "clearly intended to mis-state what is in the records" by representing that McCoy's pain level on his last day of therapy was an improved and permanent reduction of pain. (Pl.'s Br. at 20, ECF No. 13 at 20.) While McCoy may have preferred a more detailed discussion of these particular records, McCoy has not demonstrated that the ALJ's statement renders his decision unsupported or controlled by an error of law.

McCoy also argues that the ALJ erred in stating that McCoy "showed 1/5 Waddell's signs, which although not dispositive of malingering does indicate some exaggeration of symptoms." (Tr. 51.) McCoy, relying on two articles, argues that this statement is not supported by the medical literature concerning the use and interpretation of Waddell's signs. (Pl.'s Br. at 20-21, ECF No. 13 at 20-21.) Even accepting this argument as true, the court finds that it does not render the ALJ's credibility analysis unsupported. As stated above, the ALJ also reduced McCoy's subjective complaints of back pain because McCoy showed a normal gait on occasion, often showed a negative straight leg raise, was able to drive fifteen to twenty miles per week, and because Dr. Manos consistently indicated a normal back exam.

In support of McCoy's allegations of disabling knee pain, McCoy next discusses Dr. Manos's records. McCoy argues that the records demonstrate abnormal findings with regard to McCoy's knee, including numerous notations that McCoy reported tenderness and stiffness. It is clear that the ALJ considered these notations in evaluating McCoy's complaints of left knee pain. (Tr. 52) (recognizing "Dr. Manos' notations of left knee derangement with associated tenderness"). Further, as stated above, the ALJ rejected McCoy's subjective complaints of disabling knee pain based on Dr. Kanos's note that McCoy did not require a cane for normal work activity, the fact that there was no indication of intractable knee problems in the records of Drs. Kanos or Mironer, and McCoy's report to Dr. Mironer that his pain was good with sitting or standing. (Id.) Moreover, the court observes that the ALJ limited McCoy to sedentary work.[5] Accordingly, reversal is not warranted on this basis.

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

PJG

Finally, McCoy argues that the ALJ erred in referencing that the evidence revealed no radicular component in McCoy's low back pain and that McCoy exhibited normal sensory and motor exams.[6] The court finds this argument to be without merit. See 20 C.F.R. § 404.1529(c)(3) (discussing factors that may be considered in evaluating subjective complaints); Craig, 76 F.3d at 595 (stating that a claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers").

While McCoy may point to selective statements or medical evidence in the record in support of his arguments, such statements and evidence do not render the ALJ's decision unsupported. Furthermore, even accepting all of McCoy's arguments as correct, the court finds that McCoy has not demonstrated that the ALJ's credibility analysis is unsupported by substantial evidence or controlled by an error of law. In determining that McCoy's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, the ALJ considered McCoy's subjective complaints in conjunction with his abilities to perform daily activities, the medical evidence, and the other evidence of record. Accordingly, McCoy has failed to demonstrate that the ALJ erred in finding that McCoy's subjective complaints are inconsistent with the record. See 20 C.F.R. § 416.929(c)(3); SSR 96-7p; Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning

---

[6] McCoy also alleges that the ALJ erred in concluding that Dr. Kanos's opinion that McCoy might not benefit from surgery was proof that his low back pain was not disabling. This argument misconstrues the ALJ's opinion and is unsupported.

house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints); see also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"). Moreover, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Based on the record as a whole, the court cannot say that the ALJ's determination as to McCoy's credibility is not supported by substantial evidence.

**B.     Treating Physician**

McCoy also argues that, when determining his RFC, the ALJ erred in rejecting the opinion of his treating physicians, Drs. Peter Manos and Charles Kanos.[7] Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson

---

[7] In partial support of this argument, McCoy contends that the ALJ adopted an opinion from Doctor's Care that McCoy could lift up to 40 pounds and stand and walk for six to eight hours. This assertion is incorrect. The ALJ adopted the opinion from Doctor's Care that McCoy could lift ten to twenty pounds up to six to eight hours per day and Dr. Kanos's opinion that McCoy could stand and walk for two to four hours per day.

v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

With regard to Dr. Manos, the ALJ summarized Dr. Manos's opinion and treatment notes as follows:

> The claimant was treated by family practitioner Peter Manos, M.D., whose treatment notes are surprisingly sparse in their details despite the claimant's regular visits and despite Dr. Manos' opinion that the claimant was incapable of performing even sedentary work. Dr. Manos treated the claimant primarily for left knee pain, for which there are no x-rays but for which Dr. Manos diagnosed left knee derangement. Dr. [M]anos' notes appear to note tenderness of the left knee, but there are also treatment records that indicate no abnormal knee findings at all. The claimant reported back pain occasionally and showed a reduced range of motion of the lumbar spine on one occasion, but Dr. Manos noted a normal back exam the majority of the visits. Despite the overall benign findings, Dr. Manos prescribed narcotic medications including Xanax, Lortab, and Flexeril.

(Tr. 47) (citations omitted). Dr. Manos opined that McCoy could not perform even sedentary work due to severe pain in McCoy's lumbar spine and in his left knee. (Tr. 333-34.) The ALJ found that this opinion was not supported by Dr. Manos's own treatment notes, as "his records indicate overall benign exams besides for knee pain and occasional back pain." (Tr. 53.) While McCoy may point to treatment records indicating that McCoy repeatedly reported tenderness and stiffness in his left knee and that he walked with a limp, McCoy has failed to demonstrate that the ALJ's rejection of Dr. Manos's opinion that McCoy could not even perform sedentary work is not supported by substantial evidence. (See Pl.'s Br. at 21-22, ECF No. 13 at 21-22.)

In evaluating the opinion of Dr. Kanos, a neurosurgeon, the ALJ observed that Dr. Kanos treated McCoy several times in 2007 and again in April 2009, about a year and a half after McCoy's date last insured. (See Tr. 249-66, 420-31, 435-36.) The ALJ found that Dr. Kanos's treatment records from 2007 revealed the following: a negative straight leg raise; normal strength, tone,

sensory, and reflex exams; overall improvement in August 2007; reports of significant relief from back injections in October 2007; a notation that McCoy was "unable to return to work," which the ALJ interpreted as referring to McCoy's prior job as a delivery driver, which required him to lift up to seventy-five pounds; and that McCoy was not a surgical candidate because he complained of back pain without radiation or significant leg pain. (Tr. 47, 250, 251, 256, 262, 263, 265.) The ALJ also observed that in April 2009, McCoy reported right leg numbness and that the relief from the epidural injections had worn off. (Tr. 435.)

Dr. Kanos opined in August 2008 and March 2009 that McCoy could sit for two to four hours total in an eight-hour workday, stand for two to four hours total in an eight-hour workday, and walk for two to four hours total in an eight-hour workday. He also opined that McCoy would not require a cane during a typical workday; would be moderately limited in balancing, kneeling, squatting, crouching, and crawling; would be changing positions between sitting and standing; would be distracted from adequate performance of work or daily activities by his pain, which would increase greatly with physical activity. (Tr. 418-19.) The ALJ adopted Dr. Kanos's opinion that McCoy could stand and walk for two to four hours per day; however, he found that Dr. Kanos's opinion that McCoy could sit for two to four hours at a time and that his pain would distract him was not supported by the record. Specifically, the ALJ noted that the records, including Dr. Kanos's records, demonstrate that McCoy's concentration and attention were normal on many occasions.

McCoy appears to assert that the ALJ should have given Dr. Kanos's opinion greater weight based on his treatment relationship with McCoy, including coordinating his treatment with Dr. Mironer for pain management, and the fact that Dr. Kanos is a specialist. However, the court finds that these arguments do not render the decision to discount a portion of Dr. Kanos's opinion unsupported. As stated above, the ALJ found that portions of Dr. Kanos's opinion were not

supported by the record, which McCoy has failed to refute. See Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes).

Finally, to the extent that McCoy argues that the ALJ erred in giving greater weight to the state agency physicians who did not examine McCoy and are not proper specialists, the court finds that reversal is not warranted on this ground. See SSR 96-6p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.") On January 23, 2008, Dr. Dale Van Slooten completed a physical residual functional capacity assessment, concluding that McCoy (1) could occasionally lift, carry, push, or pull fifty pounds and do so frequently with twenty-five pounds; (2) could stand and/or walk about six hours in an eight-hour workday with normal breaks, and sit about the same; (3) could frequently perform most postural activity (climb ramps or stairs, balance, stoop, kneel, crouch, crawl), but only occasionally climb ladders, ropes, or scaffolds; and (4) had no manipulative, visual, communicative, or environmental limitations. (Tr. 270-77.) On April 1, 2008, Dr. William Hopkins completed the same assessment after independent review of the file and concluded that McCoy (1) could occasionally lift, carry, push, or pull twenty pounds and do so frequently with ten pounds; (2) could stand and/or walk about six hours in an eight-hour workday with normal breaks, and sit about the same; (3) could frequently balance and could occasionally perform other postural activities; and (4) had no manipulative, visual, communicative, or environmental limitations. (Tr. 283-90.) The ALJ considered these opinions, and after review of the record, the ALJ adopted Dr. Hopkins's lifting restrictions. However, he found the assessments of both doctors "to not include enough limitations that the record requires" and imposed additional restrictions. (Tr. 53.) Based on the record before the court, McCoy has

*PJG*

failed to demonstrate that the ALJ erred in his evaluation of these opinions. See 20 C.F.R. § 404.1527(f)(2) (providing that the ALJ must explain the weight he gives to the opinions of agency doctors, which are evaluated using the same factors used for other medical sources); SSR 96-6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"); Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner).

Accordingly, based on all of the foregoing, the court finds that McCoy has failed to demonstrate that the ALJ's evaluation of the opinions of Drs. Manos and Kanos was unsupported by substantial evidence or reached through the application of an incorrect legal standard.

**C.     Past Relevant Work**

Finally, McCoy argues that the ALJ erred in finding that McCoy could return to his past relevant work as an automobile service manager. The ALJ, based on the testimony of the vocational expert, determined that work as an automobile service manager is classified as sedentary and skilled work, with an SVP[8] of 8. (Tr. 53.) The parties agree that this classification was error. The vocational expert did testify that McCoy's past work as an automobile service manager was sedentary work with an SVP of 8 and his past work as a sales manager was light work with an SVP of 6. (Tr. 28.) However, as pointed out by the Commissioner, the ALJ appears to have simply switched the levels of these two jobs. An automobile service manager is actually classified as light

---

[8] SVP stands for "specific vocational preparation," which is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles ("DOT"), App. C, 1991 WL 688702. As acknowledged by the ALJ, an SVP of 8 typically involves over four years of specific vocational preparation. Id.; (Tr. 53).

work with an SVP of 6, which is precluded by McCoy's RFC; while a sales manager is classified as sedentary work with an SVP of 8. Therefore, the court finds that this was error was harmless. See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and internal quotation marks omitted); Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases)

## RECOMMENDATION

For the foregoing reasons, the court finds that McCoy has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 23, 2011
Columbia, South Carolina.

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" <u>Diamond v. Colonial Life & Acc. Ins. Co.,</u> 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>see</u> Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).