UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael W. McCoy, | ) | Civil Action No. 0:10-cv-1473-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

Plaintiff filed this action seeking judicial review of a final decision of Defendant Commissioner of Social Security denying Plaintiff's benefits. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to a United States Magistrate Judge for pretrial handling. The Magistrate Judge recommended affirming the decision of the Commissioner denying disability benefits to the Claimant. Plaintiff objected to the Magistrate Judge's Report and Recommendation, contending *inter alia* that the Administrative Law Judge (ALJ) failed to apply the proper legal standard in considering the opinions of the Claimant's treating physician. For reasons set forth below, after a *de novo* review, the Court reverses the decision of the Commissioner because of a failure to apply the proper standard for consideration of the opinions of the Claimant's treating neurosurgical physician, Dr. Charles Kanos, under 20 C.F.R. § 404.1527(d), and remands the matter for further consideration consistent with this Order

**Standard of Review**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final

1

determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b) (1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

The Court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

2

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987).

**Factual Background**

The Claimant, then 56 years of age, suffered a work related injury on December 27, 2006 while lifting a heavy object. He reported his injury to his employer and was referred to a medical office, Dr.'s Care, by his employer's workman's compensation carrier. The initial impression of the providers at Dr.'s Care was that Claimant had a lumbar sprain and he was provided medication and sent to physical therapy for rehabilitation. (Tr. 145, 153, 156, 162). Claimant's pain persisted and he remained out of work and in physical therapy. Beginning in mid-March 2007, the physical therapist began documenting a suspicion of disc pathology, which ultimately resulted in a recommendation to the Dr.'s Care physician on April 30, 2007 that the Claimant be referred to a specialist to evaluate a potential underlying spinal abnormality. (Tr. 197, 198, 203). The physical therapist also documented her opinion that it was "not safe" for the Claimant to return to work in his present condition. (Tr. 203).

The Dr.'s Care physician, noting the physical therapy recommendation, referred the Claimant to a neurosurgeon and ordered an MRI of the lumbar spine.[1] (Tr. 184). The MRI, performed on May 8, 2007, revealed significant spinal pathology. This included

---

[1] It is interesting to note that the Dr.'s Care provider recommended on April 30, 2007 that the patient be referred to a neurosurgeon, apparently based on the troubling physical therapy note of the same date, but then indicated several days later that the Claimant was then able to return to work lifting 20-30 pounds for six to eight hours per day. (Tr. 184, 188). This, however, preceded the MRI of May 8, 2007 and the evaluation by the neurosurgeon, on May 30, 2007 and thereafter. (Tr. 189-90, 249-251).

3

"multilevel disc herniation and facet joint degeneration", "moderate and advanced central canal stenosis at several levels" and "compression of the exiting L4 nerve roots bilaterally greater on the right." (Tr. 189-90).

The Claimant was first seen by a board certified neurosurgeon, Dr. Charles Kanos, on May 30, 2007. Dr. Kanos documented the patient's persistent back pain, worsened by activity, and his limited improvement with physical therapy. Since his spinal pathology did not include a radicular element, Dr. Kanos did not believe that surgery was a viable option to provide the patient relief. Instead, he recommended referral to a pain management physician for epidural steroid injections and additional physical therapy. (Tr. 249-251).

Thereafter, Claimant was evaluated and treated by a pain management specialist, Dr. Eugene Mironer. He documented the presence of chronic lower back pain, bulging disc, spinal stenosis and facet artropathy and recommended a regimen of epidural steroid injections. (Tr. 224-227). Dr. Mironer also noted the patient's vocal complaints of pain and ordered a psychological assessment to determine if there was an element of exaggeration to the complaints. The study revealed that Claimant's testing "is close to average for a pain patient" and "[i]ndividuals with a clearly defined organic basis for pain often respond in this manner." (Tr. 228-232).[2] The Claimant thereafter underwent an

---

[2] The ALJ twice noted in his decision that Dr. Mironer documented that the Claimant had a 1/5 Waddell score, which he asserted "does indicate some exaggeration of symptoms." (Tr. 48, 51). The ALJ failed, however, to make any mention of the follow up psychological testing ordered by Dr. Mironer that established that the Claimant's complaints of pain were consistent with a patient with a clearly defined organic basis for his pain. (Tr. 232). Moreover, the reliance on a 1/5 Waddell sign to indicate exaggeration of pain symptoms is inconsistent with the Waddell pain protocol. In his definitive article out of which the Waddell signs came into popular usage to evaluate low back pain, "Nonorganic Physical Signs in Low-Back Pain", Dr. Gordon Waddell cautioned against the use of any less than three out of five Waddell signs. He noted that "isolated false positive signs may occur in many organic conditions" and "isolated nonorganic signs should be ignored and significance attached only to multiple positive signs from three or more of the five types." *Spine*, Vol 5:2, pages 117-125(March/April 1980).

4

extensive series of epidural steroid injections administered by Dr. Mironer, which provided some temporary relief but the Claimant's severe back pain always returned. (Tr. 235, 236, 240, 351, 353, 355, 357, 361, 365, 435).

Dr. Kanos evaluated and monitored the Claimant's condition as he underwent the medical management regimen of steroid injections and physical therapy. He consistently took the position throughout the calendar year 2007 that the Claimant was not physically able to return to work and did not know when he could return to work. (Tr. 258, 263). He also persisted in his opinion that the Claimant's particular spinal pathology did not lend itself to successful surgical correction. (Tr. 251, 256, 265). Finally, after months of intensive medical management and treatment, Dr. Kanos opined in his office note of December 10, 2007 that "I doubt he will be able to return to work." (Tr. 265). In his last evaluation of the Claimant, on April 13, 2009, he documented the patient's severe pain (8 on a pain scale of 0-10) and the lack of permanent response to the epidural steroid injections. (Tr. 235-236).

Dr. Kanos also provided responses to questionnaires relating to the patient's condition and ability to return to work. Dr. Kanos offered the opinion that his patient could not return to even sedentary work and noted the markedly abnormal findings on the May 2007 MRI, including "spinal stenosis and multi-level disc herniation and facet joint degeneration." (Tr. 433-434). He also indicated that the Claimant would likely experience greatly increased pain with such employment related physical activity as walking, standing, bending, stooping and movement of extremities to cause "distraction

5

from the task or even total abandonment of the task" and interfere with the "adequate performance of daily activities of work." (Tr. 419).[3]

Two physicians performed chart reviews of the Claimant's medical records for the Social Security Administration and concluded that he was capable of returning to work. One of these, Dr. Dale Van Slooten, a general surgeon, opined that Claimant could occasionally life 50 pounds and had essentially no postural limitations with climbing ramps and stairs, stooping, kneeling, crouching or crawling. (Tr. 270-277). The other chart reviewer, Dr. William Hopkins, an ob-gyn, would limit occasional lifting to 20 pounds but noted the patient's spine pathology was "SEVERE. Limit to light work". (Tr. 284-85) (capitalization in the original). He also noted that if the disability were allowed, the date of the Claimant's injury, December 27, 2006, was a "medically reasonable" established onset date. (Tr. 285).

A vocational expert, Kathleen House Robbins, testified at the Claimant's administrative hearing and addressed a series of hypotheticals relating to his ability to stand, sit and walk for various hours on a typical eight hour shift. She was asked to offer an opinion concerning whether under various scenarios there were positions in the national economy which the Claimant was qualified by prior work experience to perform. She testified that even if the Claimant was limited to standing or sitting two to four hours per day there were positions he could perform from his past relevant work. (Tr. 29-32). Ms. Robbins expressly limited her opinion regarding the Claimant by noting that he

---

[3] The ALJ indicated that Dr. Kanos' opinion that the Claimant was unable to return to work "reasonably appears" to be in reference to his former employment where he was required to lift 75 pounds. (Tr. 47). The Court finds this conclusion by the ALJ to be unsupported by substantial evidence in the record. Indeed, the Court notes that Dr. Kanos' responses to the questionnaires place no such limitation on his opinion and expressly states that he does not believe that Claimant can perform even sedentary work. (Tr. 418-19, 433-34).

6

would be unemployable if his pain was so significant as to distract him in adequately performing his work or that the pain would force him frequently to miss work. (Tr. 31-32). As will be discussed more fully below, no medical opinion evidence other than that offered by Dr. Kanos expressly addressed the issue of the exacerbation of the Claimant's pain symptoms which would likely occur with a return to work and work related activities.

The ALJ issued his decision on June 19, 2009 denying the Claimant's application for disability benefits. The ALJ found that the Claimant's "severe impairments" under 20 CFR §404.1520(c) included degenerative disc disease and stenosis of the lumbar spine but that he had the residual functional capacity (RFC) to perform sedentary work as defined under 20 CFR §404.1567(a). (Tr. 46, 50). In assessing the Claimant's RFC, the ALJ made only a brief passing reference to Dr. Kanos' opinion that the patient's pain would distract him from adequate work performance and work tasks. He stated simply that Dr. Kanos' opinion "is not supported by the record" and observed that the record did not document any impairment of the Claimant's concentration or attention. (Tr. 53). As discussed more fully below, the ALJ failed to address the numerous references in the record indicating that the Claimant's pain was exacerbated by physical activity, which fully supported Dr. Kanos' opinion. Further, the ALJ failed to analyze Dr. Kanos' opinion under the standards set forth under 20 C.F.R. §404.1527(d) regarding the opinions of treating physicians.

## Discussion

The central issue raised by this appeal is whether the ALJ applied the proper legal standard to assessing the opinions of Dr. Kanos, a treating physician and neurosurgical

7

specialist. Generally speaking, the Social Security Administration accords greater weight to the opinions of treating physicians, which is based upon the premise that treating sources are "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments and "may bring a unique perspective to the medical evidence...". 20 C.F.R. §404.1527(d)(2). Where the treating physician's opinions are "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record..., the Commissioner is obligated to give those opinions "controlling weight." (Id.). To the extent the treating physician's opinions are not entitled to controlling weight, the treating physician's opinions will still be evaluated by a variety of factors including whether the various medical experts have examined the patient, the nature, length and extent of the treatment relationship, the consistency of the treating physician's opinion and whether the treating physician is a specialist. 20 C.F.R. §404.1527(d); *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005); *Mastro v. Apfel*, 270 F.3d 171 (4th Cir. 2001).

Based upon the uncontested testimony of the vocational expert, the Claimant is not employable if his pain was so significant as to distract him from performing his work related duties or would require him frequently to miss work. (Tr. 31-32). Dr. Kanos expressly addressed this issue by offering the opinion that the Claimant could not perform even sedentary work based upon his significant spinal pathology, confirmed by a lumbar spine MRI, and that his persistent pain would be exacerbated by such normal occurring work related activities as walking, standing and stooping. (Tr. 419, 433-34). He further opined that the patient's increased pain would cause distraction from work related tasks and interfere with the "adequate performance of ... work." (Tr. 419).

8

Under the standards set forth in 20 C.F.R. 404.1527(d), the ALJ should have first determined if Dr. Kanos's opinion is entitled to controlling weight. This required a determination of whether his opinion is "well supported by acceptable diagnostic studies" and not inconsistent with other substantial evidence in the record. §404.1527(d)(2). In this situation, Dr. Kanos' opinion is based upon the findings of a May 2007 MRI and numerous references in the medical record indicating that the Claimant's pain symptoms were exacerbated by physical activity. (Tr. 151, 162, 184, 189-90, 200, 202, 249, 251, 255-57, 262, 264, 358).[4] The ALJ's failure to analyze Dr. Kanos' opinions under the standards of 20 C.F.R. §404.1527(d)(2) to determine if it was entitled to controlling weight alone mandates reversal and remand. Additionally, even if Dr. Kanos' opinion was not accorded controlling weight, it should have been evaluated under the standards set forth in §404.1527(d), which included consideration of his repeated examination of the patient, his treatment history with the patient, the consistency of his opinions and the fact that he is a specialist.[5] Again, the ALJ failed to apply the standards of §404.1527(d) in determining the weight to be given to the treating physician's opinion, which mandates reversal and remand.

---

[4] The ALJ's finding, that Dr. Kanos' opinions that the patient's pain would be exacerbated by physical activity of work and would distract him from the performance of his duties is "not supported by the record", is not supported by substantial evidence. The record includes physical therapy notes indicating that the Claimant has pain when performing any functional activities, making it "not safe" to return to work (Tr. 203); Dr. Kanos' December 10, 2007 office note that lifting aggravates his pain (Tr. 264); a pain management note of May 22, 2008 that the patient's pain is aggravated by bending and twisting (Tr. 358); a physical therapy note of April 21, 2007 indicating that the patient is worse with lifting and prolonged sitting (Tr. 200); and Dr. Kanos' office note of May 30, 2007 indicating that the patient's back pain worsened when undergoing "work hardening" therapy to assist him in returning to work (Tr. 251).

[5] The two chart reviewing medical experts, Dr. Hopkins and Dr. Van Slooten, offered no opinion concerning whether the Claimant's pain would be exacerbated by physical activity associated with sedentary work. The sole opinion in the record on this critical issue was by the treating specialist physician, Dr. Kanos.

## Conclusion

Based on the above, this matter is **REVERSED** pursuant to sentence 4 of 42 U.S.C. 405(g) and **REMANDED** for further consideration not inconsistent with this Order.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

July 5, 2011
Charleston, South Carolina